## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUZANNE BREWER and
RONALD BREWER,

       *Plaintiffs*,

       v.

UNITED STATES OF AMERICA

       *Defendant*.

_____/

Case No. 2:21-cv-12686

District Judge
Gershwin A. Drain

Magistrate Judge
Kimberly G. Altman

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE THE CAUSATION OPINION OF DR. PIERCE [#26]

Suzanne and Ronald Brewer ("Plaintiffs") initiated this negligence action against the United States of America (the "Government" or "Defendant") on November 16, 2021. ECF No. 1. Plaintiffs allege that on May 8, 2019, Mrs. Brewer was rear-ended while operating Mr. Brewer's personal vehicle by an on-duty employee for the United States Postal Service. *Id.* at PageID.8. Mrs. Brewer has suffered severe injuries to her neck, back, and spine because of the accident. *Id.* at PageID.9 ¶ 25. Plaintiffs intend to call as a witness Dr. Jeffrey Pierce, D.O., one of Mrs. Brewer's treating physicians, who is being offered for his opinion that the May 8 accident caused Mrs. Brewer's injuries.

Presently before the Court is the Government's motion *in limine* seeking to exclude Dr. Pierce's causation opinion. ECF No. 26. The Government argues that

Dr. Pierce's opinion is inadmissible because (1) it fails to meet the reliability standards set by Federal Rule of Evidence 702 and *Daubert*; (2) because Dr. Pierce's causation opinion is assertedly not contained in his expert report; and (3) because Dr. Pierce failed to conduct a differential diagnosis. *Id.* at PageID.145.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter and will resolve it on the briefs. *See* E.D. Mich. LR 7.1(f)(2); ECF No. 27. For the following reasons, Defendant's Motion will be granted.

## I.    LEGAL STANDARD

Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co*., 718 F.3d 556, 561 (6th Cir. 2013) (citation omitted). District courts enjoy broad discretion "over matters regarding the admissibility of evidence at trial." *Lockard v. Bray*, 602 F. Supp. 3d 998, 1005 (E.D. Mich. 2022) (citing *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991)). Though exclusion of expert testimony is an extreme remedy, a trial court should exclude expert testimony on a motion *in limine* when the opinion "amounts to mere guess or speculation." *United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (citation omitted) (cleaned up).

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 104, "the court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Civ. P. 104(a). Federal Rule of Evidence 702 controls this consideration for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the trial judge is the "gatekeeper" who must assess the reliability of an expert's principles and methods. *Exec. Ambulatory Surgical Ctr., LLC v. Allstate Fire & Cas. Ins. Co.*, 623 F. Supp. 3d 826, 830 (E.D. Mich. 2022) (*citing Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993)). Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

***

The Government argues that Dr. Pierce's causation opinion must be excluded because it does not meet the reliability standard imposed by Rule 702. Citing the Sixth Circuit's opinions in *Tamraz v. Lincoln Electricity Co.* 620 F.3d 665 (6th Cir. 2010) and *Finley v. Mora*, No. 22-1886, 2023 WL 7550447 (6th Cir. Nov. 14, 2023), the Government asserts that courts must differentiate between whether a treating physician may reliably offer a diagnostic opinion, which considers "what disorder caused the set of symptoms observed," or whether the physician is separately qualified to offer an etiological opinion, which considers what caused the diagnosed disorder at the outset. ECF No. 26, PageID.151–152. The Government contends that Dr. Pierce's proffered opinion is not rooted in etiological analysis, as he "confirmed [in his deposition] that his causation opinion is based only on what Brewer told him about her medical history at a high level." *Id.* at PageID.154.

For their part, Plaintiffs argue that Government's position does not apply to Dr. Pierce, who is an experienced and multi-certified physician specializing in the type of injury Mrs. Brewer suffered. ECF No. 31, PageID.208–209. Plaintiffs contend that Dr. Pierce properly formed his opinion after relying on Mrs. Brewer's self-reported medical history, telemedicine visits, in-person examinations, and diagnostic testing that he conducted personally. *Id.* at PageID.209–210. For this

4

reason, they argue that the Government's cases are inapposite, as the expert in *Tamraz* should have been excluded because he testified outside of his expertise, while the expert opinion in *Finley*, unlike here, was insufficient because the plaintiff presented with pre-existing conditions in the area of the injury. *Id.* at PageID.211–213.

## A.   The Controlling Authority

Both parties cherry-pick the above cases to some degree, so a brief overview is appropriate. Starting with *Tamraz*, the Sixth Circuit considered whether a district court erred in admitting a treating physician's opinion that exposure to manganese caused the plaintiff's parkinsonism. *Tamraz*, 620 F.3d at 667. Every doctor who examined the plaintiff, a welder of 25 years, arrived at a different conclusion about the cause of his condition. *Id.* at 669. It was the second treating physician, offered to testify to causation, who asserted that the plaintiff suffered from manganese induced parkinsonism. *Id.* In finding that the doctor's opinion was born of impermissible speculation, the court considered his deposition testimony.

The doctor testified that he believed manganese caused the disease because "that seemed the most likely explanation for [the plaintiff's] early onset parkinsonism" based on his clinical examination, the patient's history, and his experience with movement disorders. *Id.* He found his conclusion most likely because the plaintiff was exposed to manganese; he developed symptoms

consistent with non-manganism Parkinson's Disease; some science and literature hypothesizes that toxins and genetics can contribute to Parkinson's Disease; the plaintiff may have had Parkinson's Disease genes; and manganese may have triggered these genes. *Id.*

The court found that this reasoning did not meet the "knowledge" requirement outlined in Rule 702 because the opinion was obviously "no more than a hypothesis" even if correct. *Id.* Reaching a conclusion because "***some*** literature has ***hypothesized*** that toxins combined with genetics may cause other cases of Parkinson's Disease," because it "[manganese] ***would be a possible candidate*** for triggering Parkinson's Disease," and because "Tamraz ***may have*** the genes for Parkinson's Disease" required "speculative jumps" unable to properly assist a fact finder. *Id.* (emphasis added). The court noted that even though Rule 702 does not require absolute certainty, the successive string of hypotheses offered by the treater crosses over into guesswork. *Id.* at 672. Of note, the *Tamraz* court did not rule that a doctor may not testify to etiology. Rather, it found that a doctor's opinion must be more than "just an educated hunch but at least a preponderance of the evidence." *Id.* at 673.

Nonetheless, the *Tamraz* court recognized that "where one person sees speculation[,] another may see knowledge . . . [so] the district court enjoys broad discretion over where to draw the line." *Id.* at 672. Further, *Tamraz* did not

6

establish an absolute rule that treating physicians may not rely on experience, medical reports, the self-reporting of patients, or other traditional medical tools to arrive at an etiological conclusion in every case. The core of the *Tamraz* decision was that "the 'knowledge' requirement of Rule 702 requires "more than subjective belief or unsupported speculation[.]" *Id.* at 670. This Court thus reads *Tamraz* to mean that the scientific basis of an expert's causal opinion must meet the demands of the diagnosed condition and cannot gratuitously rely on assumptions and leaps in logic. Otherwise, the opinion testimony cannot assist the trier of fact in understanding the evidence.

Thirteen years later, the Sixth Circuit in *Finley* found that a treating physician's causation opinion was properly excluded because it too relied on insufficient scientific methodology. In that case, the plaintiff allegedly suffered injuries to his neck, back, and shoulders when a tractor-trailer operated by the defendant collided with his own. 2023 U.S. App. LEXIS 30407, at *2–3. After an initial prescription of medication and physical therapy failed to remedy the pain, the plaintiff's orthopedic surgeon conducted extensive treatment, performed multiple shoulder surgeries, and led post-operative treatment. *Id.* at *3. During subsequent litigation, the surgeon opined that the tractor-trailer accident caused the plaintiff's injuries.

The *Finley* Court extended the ruling in *Tamraz* and found that the district

court did not abuse its discretion in excluding the treater's causation opinion. Once again, the fatal flaw was that his causation opinion relied on "faulty assumptions and methodological gaps" that could not be considered scientifically reliable. *Id.* at \*10. The doctor based his opinion "on a detailed history from Finley, a physical examination and testing, and his review of Finley's medical records." *Id.* at \*4–5. At his deposition, the doctor admitted that he mistakenly believed that the plaintiff was seated in a car during the accident, rather than a tractor-trailer. *Id.* at \*10. He also admitted that he was unaware that plaintiff had been involved in a prior car accident, after which he complained of back and neck pain, sought treatment, and missed a month of work. *Id.* Lastly, the doctor stated that he "had no idea of the forces involved in the collision, was unaware of the lack of damage to the tractor-trailers, and did not know whether the impact was significant enough to produce Finley's injuries." *Id.* These errors and logical gaps rendered the opinion wholly unreliable.

As in *Tamraz*, the *Finley* doctor could not produce a causal chain free of assumptions and errors in fact. This is why a plaintiff's "self-reporting of the chronology of the accident and his symptoms is insufficient to support an etiological conclusion," as is a doctor's "review of [his] medical records and experience performing surgery on him." *Id.* at \*9. That information alone leaves ample room for impermissible speculation and error. To be sure, a treating

8

physician "need not eliminate all other possible causes of the injury." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000). Nor are doctors required to engage in differential diagnosis as the Government suggests.[1] The Sixth Circuit has never held as much.[2] But the *Finley* decision lays bare the principle that a treating physician offering an opinion on the cause of an injury must have used reliable principles to "isolat[e] the incident that ***may have*** caused it." *Id.* at *10 (emphasis added). It remains in this Court's discretion to determine whether a treater has met or fallen short of the standards outlined in *Tamraz* and *Finley*.

## B.    Dr. Pierce's Causation Opinion Must be Excluded.

Under the legal standards outlined above, Plaintiffs have not shown that Dr. Pierce used reliable principles and methods to opine that the collision caused Mrs. Brewer's injuries. The Court's assessment is not aided by an expert report under Federal Rule of Civil Procedure 26(a)(2)(B) because Dr. Pierce is one of Mrs. Brewer's treating physicians rather than a retained expert. He is accordingly offered to testify to opinions he formed during Mrs. Brewer's treatment, requiring him only to offer a summary of the subject matter, facts, and opinions to which he

---

[1] "In a differential diagnosis, 'the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment.'" *In re Cook Med., Inc.*, 431 F. Supp. 3d 1033, 1043 (S.D. Ind. 2020) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433 (7th Cir. 2013)).

[2] *Finley*, 2023 U.S. App. LEXIS 30407, at *23 ("In any case, this Court has never held that differential diagnosis is required for a treating physician's opinion to pass the *Daubert* test.") (Clay, J., dissenting).

will testify under Rule 26(a)(2)(C). *See* ECF No. 14, PageID.112–113 (Plaintiff's First Amended Witness List). A disclosure under 26(a)(2)(C) need not be nearly as detailed as a traditional expert report. *Exec. Ambulatory Surgical Ctr., LLC v. Allstate Fire & Cas. Ins. Co.*, 623 F. Supp. 3d 826, 832 (E.D. Mich. 2022). But the report "still must touch all the bases  listed in Rule 26(a)(2)(C) to fulfill the purpose of the disclosure requirement, which is to prevent 'surprises as to the scope of testimony.'" *Cahoo v. Fast Enters. LLC*, No. 17-10657, 2021 U.S. Dist. LEXIS 50647, at *8-9 (E.D. Mich. Mar. 18, 2021) (quoting *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007)).

To the extent he intends to testify to opinions he formed outside of his treatment or for the purpose of litigation, those opinions must be contained in an expert report under Rule 26(a)(2)(B). *Avendt v. Covidien Inc.*, 314 F.R.D. 547, 555 (E.D. Mich. 2016) (holding that an expert testifying beyond the scope of treatment "must still file a full blown expert report under 26(a)(2)(B)"). No such report is offered. Dr. Pierce has, however, produced a treatment summary overviewing his assessment of Mrs. Brewer, which is offered to satisfy Rule 26(a)(2)(C). ECF No. 26-5.

*** 

Dr. Pierce's summary, as well as his deposition testimony, reveals that he did not develop a causation opinion during treatment. And even accepting that he

10

did, the opinion relies solely on the information the Sixth Circuit has determined to be insufficient. Starting with his treatment summary, it fails to offer even a high-level overview of Dr. Pierce's opinion on the cause of Mrs. Brewer's injuries. It begins with a full diagnosis of her condition after an initial evaluation on August 26, 2020. ECF No. 26-5, PageID.179. The summary indicates that Mrs. Brewer presented with pain traceable to irregularities in her neck and spine (e.g., "Right C5-C6 herniation" and "whiplash") and that Dr. Pierce conducted subsequent MRI and EMG testing which revealed additional spinal injuries. *Id.* at PageID.179–180. It further explains that Mrs. Brewer's complaints of pain and discomfort "are supported by the objective findings that we have dealt with over her period of time, which include the MRI results, EMG results, and her examination." *Id.* at PageID.180. As for any potential opinion on causation, the closest the report gets is the following: "At this point through her history taken on the initial exam of August 26, 2020, the patient states that she was very healthy and independent prior to the accident and all of these injuries have occurred because of the accident on February 8, 2019." *Id.*

If Dr. Pierce's treatment summary is a full statement of the opinions he developed while treating Mrs. Brewer, as he asserted during his deposition, then it does not demonstrate that Dr. Pierce developed an opinion on the cause of Mrs.

Brewer's injuries at that time.[3] The fact that "*the patient states*" that "all of these injuries have occurred because of the accident" does not disclose to the Government that Dr. Pierce concluded through his own assessment that she in fact suffered her injuries because of the collision. Rather, it suggests that Dr. Pierce merely parroted information conveyed to him by Mrs. Brewer. The fact that he did not develop a causation opinion is not unusual for a treating physician, as the Sixth Circuit has recognized that one "understandably is more concerned with identifying and prospectively treating his patient's condition than isolating the incident that may have caused it." *Finley*, 2023 U.S. App. LEXIS 30407, at *10. But it means that before Dr. Pierce could credibly testify to causation, he was required to conduct etiological analysis outside of his typical focus of diagnosis and treatment. *Tamraz*, 620 F.3d at 673. ("The ability to diagnose medical conditions is not remotely the same as the ability to deduce in a scientifically reliable manner, the causes of those medical conditions.") (cleaned up). To this end, Dr. Pierce's report indicates at most that he accepted Mrs. Brewer's representation about her health prior to the accident and that her injuries are consistent with her story of the events. This is simply insufficient. *Finley*, 2023

---

[3]*See* ECF No. 26-4, PageID.176–177 at 141:22–142:6 ("Q. Okay. Does this document contain the opinions that you will offer in this case? A. I'm sorry? Q. Does this document contain the opinions that you will offer in this case? A. I believe so. Q. Will you offer any opinions that are not contained in this report? A. I'm not sure that means, but I don't think so.").

U.S. App. LEXIS 30407, at *9 (a patient's "self-reporting of the chronology of the accident and his symptoms is insufficient to support an etiological conclusion."). And Dr. Pierce has not produced a full expert report to supplement this deficiency.

Even if the Court credits that Dr. Pierce developed an opinion on the cause of Mrs. Brewer's injuries during her treatment, deposition testimony reveals that his methodology suffers from the same analytical gaps invalidated in *Finley*. To start, he testified that he received all of his information about the car accident from Mrs. Brewer, including her health at the time of and after the accident: he did not review her emergency room records from the date of the accident, the traffic report describing the accident, or any medical records potentially developed in the 15 months between the accident and the first treatment session.[4] He stated further that he could not speak to Mrs. Brewer's condition during the 15 months between the accident and her first meeting with him, suggesting that he did not determine

---

[4]ECF No. 26-4, PageID.170 at 18:9–13 ("Q. In the first paragraph under History of Present Illness, you described a car accident that Ms. Brewer was involved in on May 8th, 2019. From where did you glean that information about the car accident? A. From her. Q. You note that x-rays were taken in the ER. Did you ever review those x-rays? A. I don't believe so.");

*Id.* at 20:12–15 ("12 Q. Did you review Ms. Brewer's medical records from before she came to you about 15-and-a-half months after the car accident? A. No.");

*Id.* at PageID.172, 42:14–16 ("Q. Okay, so at the time that you were treating Ms. Brewer, had you seen the traffic crash report? A. No. Q. To your knowledge did you review any of Ms. Brewer's treatment notes from the doctors who treated her before you did 15-and-a-half months after the car accident? A. No.")

whether any intervening factors produced or exacerbated injuries during that time.[5] These gaps in information, especially with respect to the nature of the accident, prevent Dr. Pierce from drawing a scientifically supportable line between the collision and his causation opinion.

The flaws in Dr. Pierce's opinion are most clearly illustrated by the answer he gave at deposition when asked his opinion on the cause of Mrs. Brewer's pain. He stated, "[w]ell, taking her at face value, it was the impact of the car accident." Explaining further, Dr. Pierce said that he concluded that the collision caused Mrs. Brewer's injuries because "she was the one telling [him]. That's what we're going by. I'm going by what she's describing. I don't feel she's out for some major secondary gain."[6] But simply believing a plaintiff is an improper basis on which to ground an expert opinion, as "[e]xpert witnesses are generally not permitted to base their conclusions on an evaluation of a witness's credibility[.]" *Esch v. Cty. of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017).

In sum, Dr. Pierce's process of concluding that the car accident caused Mrs. Brewer's injuries does not live up to the reliability standard imposed by Federal

---

[5]*Id.* at PageID.176, 139:7–15 ("Q. Do you know whether Ms. Brewer's condition was better on the day after the car accident, versus 15-and-a-half months after the car accident when you first saw her? A. I don't think it was asked. Q. Okay. Do you know whether Ms. Brewer's condition was better six months after the car accident versus 15-and-a-half months after the car accident when you first saw her? A. No. We did not ask questions in that direction.").
[6]*Id.* at PageID.177, 143:10–15.

Rule of Evidence 702. Contrary to Plaintiff's arguments, the Sixth Circuit has explained that it does not matter that Dr. Pierce arrived at his conclusion "by considering customary medical information" consistent with "how doctors typically treat patients." *Finley,* 2023 U.S. App. LEXIS 30407, at *9. The causation inquiry is not concerned with the diagnostic conclusions observed through treatment. It asks physicians to speak to the incident that originated the diagnosed injury. To permit a doctor to testify to what caused an injury when he has done nothing more than consider and treat its consequent symptoms is to "conflate[] a doctor's expertise in diagnosis with a doctor's expertise in etiology." *Finley*, 2023 U.S. App. LEXIS 30407, at *9.

To be sure, Dr. Pierce admitted at his deposition that his focus was treatment. Viewing his own role, he stated that "I'm not here to investigate her; I was here to go by her story, take her at face value, and treat her appropriately." ECF No. 26-4, PageID.177 at 143:24–144:1. The undersigned agrees that this is a treating physician's role. And it qualifies Dr. Pierce to testify to the myriad diagnostic conclusions he developed while treating Mrs. Brewer's pain. But the Court is understandably skeptical of his ability to do more, as experts wear a cloak of credibility in the courtroom that differentiates them from lay witnesses. To the extent he intends to merely restate what he was told by the patient, the expert designation and its accompaniments are inappropriate. Thus, as the Court finds that

15

Dr. Pierce did not independently determine the cause of Mrs. Brewer's injuries, he is not qualified to offer an opinion on the same.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to exclude the causation opinion of Dr. Pierce (ECF No. 26) is **GRANTED**. He may still testify as an expert to opinions disclosed in his report, including that Mrs. Brewer's injuries are consistent with her chronology of events.

**IT IS SO ORDERED**.

Dated:  April 11, 2024                                        /s/ Gershwin A. Drain
                                                                          GERSHWIN A. DRAIN
                                                                          U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on

April 11, 2024, by electronic and/or ordinary mail.

/s/Teresa McGovern

Case Manager